UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

CASE NO. 0:25-CV-61607-MD

SHERLEY HILARY MANCEBO NAVARRO,

    Plaintiff,

v.

DMI GC HOLDINGS, LLC,

    Defendant.

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF
DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO
STAY PROCEEDINGS PENDING COMPLETION OF ARBITRATION**

Defendant DMI GC Holdings, LLC ("Defendant") hereby submits this Reply Memorandum in Support of Defendant's Motion to Compel Arbitration and to Stay Proceedings Pending Arbitration (ECF No. 4).

**I.**    **The Dispute Resolution Agreement Contains A Delegation Clause Delegating Questions Of Enforceability To The Arbitrator.**

"Among other things, the parties may agree to arbitrate gateway questions of arbitrability including the enforceability, scope, applicability, and interpretation of the arbitration agreement." *Jones v. Waffle House, Inc.,* 866 F.3d 1257, 1264 (11th Cir. 2017) (citing *Rent-A-Center, W., Inc. v. Jackson,* 561 U.S. 63, 68-69 (2010). In the instant action, the parties did just that. Specifically, the Dispute Resolution Agreement ("DRA") contains a delegation clause that states the following:

> …the Arbitrator, and not any court, shall have exclusive authority to resolve any dispute relating to the validity, applicability, enforceability, unconscionability or waiver of this Agreement, including, but not limited to any claim that all or any part of this Agreement is void or voidable.

*See* ECF No. 4 at Ex. 2, ¶1. Based on this language alone, any dispute regarding the DRA must be submitted to the arbitrator. *See Parnell v. CashCall, Inc.,* 804 F.3d 1142, 1144 (11th Cir. 2015) (if "an arbitration agreement contains a delegation provision – committing to the arbitrator the threshold determination of whether the agreement to arbitrate is enforceable – the courts only retain jurisdiction to review a challenge to that specific provision"); *Jones*, 866 F.3d at 1263-1267 (noting that the relevant arbitration agreement contained a delegation clause and enforcing the provision according to its terms). In light of the delegation clause, the issue of whether the DRA is enforceable should be decided by an arbitrator. Nonetheless, to the extent that this Court intends to make that determination, Plaintiff's conclusory claim that she did not agree to arbitrate disputes with Defendant (including those raised in the instant action) is contrary to the undisputed evidence provided by Defendant with its Motion to Compel Arbitration.

## II. The Lack Of Plaintiff's Font-Based Electronic Signature On The DRA Does Not Contradict Defendant's Evidence That The Parties Entered Into A Valid And Enforceable Arbitration Agreement.[1]

Plaintiff denies that she entered into an arbitration agreement with Defendant and her sole argument in rebuttal to the evidence submitted by Defendant to the contrary is that the DRA does not display her electronic signature. *See* Plaintiff's Opposition pp. 4-5. Plaintiff's argument fails, both legally and factually.

In Defendant's Motion, Defendant provided a detailed explanation of the process by which employees are provided with and agree to the DRA, including the SuccessFactors software system used for pre-hire documents and onboarding documents, and the different system capabilities of each system. *See* ECF No. 4 at §II.A and at Ex. 2 (March Decl.), ¶¶4-31. As part of those details,

---

[1] In Plaintiff's Opposition, she does not dispute Defendant's assertion regarding the scope of the claims covered by the DRA and that the claims she has asserted in the instant action are within the scope of the claims covered by the DRA.

2

Defendant explained that the SuccessFactors Onboarding module utilizes Adobe and/or DocuSign for prospective employees to review and sign their pre-hire documents, which results in the pre-hire documents being affixed with a font-driven electronic signature when employees agree to those documents. *Id.* at Ex. 2, ¶¶8-12. Defendant further explained that, unlike the Onboarding module, the SuccessFactors Learning Management System ("LMS") module does not generate a font-based signature, but instead, an employee's agreement to those documents is captured and attributed through an audit trail provided by the LMS module. *Id.* at Ex. 2, ¶¶30-31.

Defendant explained that it uses the LMS module to provide employees with access to the DRA, where they review it, acknowledge receipt, and confirm their agreement to abide by its terms and conditions by clicking "Agree," which serves as the employee's electronic signature when it is recorded in their LMS audit trail. *Id.* at Ex. 2, ¶¶24-26, 28. In fact, employees are expressly informed "By clicking 'Agree,' you are indicating that you have read and understood the foregoing document and consent to the terms of the document, and agree to use your electronic signature to demonstrate your acknowledgement and consent." *Id.* at Ex. 2, ¶29. Defendant further explained that the audit trail captures the exact date, time, and user ID tied to the documents reviewed and acknowledged and once generated, the audit trail cannot be altered or edited by anyone, serving as secure verification (akin to a digital fingerprint) that the employee reviewed and agreed to the terms. *Id.* at Ex. 2, ¶30.

Plaintiff *admits* that she completed the Dispute Resolution module and that a Certificate of Completion was issued as a result. *See* Plaintiff's Motion at §II, ¶¶2, 4. However, consistent with the process described in Defendant's Motion and above, the audit trail regarding Plaintiff's access of the Dispute Resolution module shows that she completed the Dispute Resolution module on October 13, 2022 at 1:51 pm (MST). *See* ECF No. 4 at Ex. 2, ¶¶33-36. Plaintiff could not have

"completed" the Dispute Resolution module or received a Certificate of Completion *unless* she clicked "Agree" after receiving the DRA.  *See* Supplemental Declaration of Gene March at, ¶6, attached hereto as Exhibit 1.  Specifically, a Certificate of Completion is only generated after an employee has clicked the button to indicate they have read and understood the DRA and consent to the terms of the document, thereby serving as the employee's electronic signature to demonstrate their acknowledgment and consent.  *Id.*  Thus, Plaintiff's admissions establish and confirm that she did just that.  These undisputed facts confirm that Plaintiff accepted and agreed to the DRA through a valid and enforceable process.

Plaintiff's argument that there is no enforceable arbitration agreement because her font-based electronic signature is not printed on the DRA is unavailing. The Eleventh Circuit has expressly stated that "while the FAA requires that the arbitration agreement be in writing, it does not require that it be signed by the parties." *Caley v. Gulfstream Aerospace Corp.,* 428 F. 3d 1359, 1368 (11th Cir. 2005).  No signature is required, and the fact that the Arbitration Agreement is in writing is all that is required to satisfy the FAA.  *Id; see also Wiles v. Palm Springs Grill, LLC,* 2016 U.S. Dist. LEXIS 106297, *5 (S.D. Fla. Aug. 11, 2016); *Santos v. Gen. Dynamics Aviation Servs. Corp.,* 984 So. 2d 658, 660-61 (Fla. 4th DCA 2008).

"In Florida, it is well-settled that the offeror may specify the terms and manner of acceptance."  *Dorward v. Macy's, Inc.,* 2011 U.S. Dist. LEXIS 78639, *25 (M.D. Fla. Jul. 20, 2011).  Thus, "a contract may be binding on a party even in the absence of that party's signature if the parties assented to the contract in another manner." *Wright v. Greensky, Inc.,* 2021 U.S. Dist. LEXIS 110593, *41 (S.D. Fla. Jun. 14, 2021). Defendant plainly described and specified the terms and manner of acceptance of the DRA.  Clicking "Agree" is the only way that someone can "Complete" the Dispute Resolution module and receive a "Certificate of Completion" and the fact

4

that Plaintiff did so is not only established by Plaintiff's admission that she did both of those things, but also by the audit trail, which shows she did so on October 13, 2022 at 1:51 pm (MST). *See* ECF No. 4 at Ex. 2, ¶¶33-36.

In *Wilson v. Alorica, Inc.*, 2018 U.S. Dist. LEXIS 82364 (N.D. Ala., May 16, 2018), an arbitration agreement was enforced under similar factual circumstances as exist here. In *Wilson,* the plaintiff argued that the agreement was not enforceable because it was not signed or dated and that, even if he reviewed the terms, he did not agree to them. *Id.* at *3-5. The defendant presented electronic records showing the plaintiff accessed the agreement using a unique login and password, that the agreement was electronically acknowledged through a secure process, and this was established by providing a copy of the internal Company document that showed the date and time when the electronic acknowledgement occurred. *Id* at *3. The court found this evidence sufficient to establish the existence of a valid agreement and held that the electronic version constituted a "written" agreement under the FAA. *Id* at *5. The court found that the act of clicking a button on a computer to "acknowledge" an electronically provided agreement was sufficient to constitute an agreement and that the defendant "met its burden of proving the existence of an arbitration agreement with the plaintiff . . . [because] [i]t has produced the electronic record, showing that the plaintiff's unique login and password were used to access and acknowledge the agreement." *Wilson,* 2018 U.S. Dist. LEXIS 82364 at *8.

The plaintiff in *Wilson* stated that he did not recall agreeing to arbitrate, while Plaintiff here expressly denies doing so. However, Plaintiff's assertion is flatly contradicted by her own admission that she completed the Dispute Resolution module and received a Certificate of Completion for doing so. She offers no explanation for how she could have done so without clicking "Agree" to acknowledge and accept the DRA, because that is simply not possible.

5

Ultimately, Plaintiff is trying to manipulate to her advantage the fact that the system and the process used by Defendant to provide employees with the DRA does not place a font-based electronic signature on the document. However, Defendant explained that, although that is not how the system and the process works, evidence provided regarding Plaintiff's use and access of the system plainly establishes that she provided her consent and agreement to the DRA. This affirmative act of assent, documented through secure electronic means, reinforces the enforceability of the arbitration agreement under both Florida law and the FAA.

WHEREFORE, for all of the foregoing reasons, and the reasons previously stated in Defendant's Motion, Defendant respectfully requests that the Court issue an Order staying the instant action and compelling Plaintiff to proceed with her claims in arbitration, in accordance with the terms of the Dispute Resolution Agreement.

DATED this 15th day of September 2025.

Respectfully submitted,

**LITTLER MENDELSON, P.C.**
Miami Tower
100 SE 2nd Street, Suite 3210
Miami, Florida  33131
Tel: (305) 400-7500

/s/ Elizabeth J. Stewart
   Aaron Reed
   Florida Bar No. 557153
   E-mail: areed@littler.com
   Elizabeth J. Stewart
   Florida Bar No. 1059581
   E-mail: elstewart@littler.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 15th day of September 2025, a true and correct copy of the foregoing was electronically filed and served via transmission of Notice of Electronic Filing generated by CM/ECF on all counsel or parties of record on the Service List below, and also via any additional manner noted below.

/s/ Elizabeth J. Stewart
Elizabeth J. Stewart

## SERVICE LIST

Brian H. Pollock
E-mail: brian@fairlawattorney.com
Katelyn Schickman
E-mail: katie@fairlawattorney.com
FairLaw Firm
135 San Lorenzo Avenue, Suite 770
Coral Gables, Florida 33146
*Attorneys for Plaintiff*
*Served via CM/ECF*