UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-61607-CIV-DAMIAN

**SHERLEY HILARY MANCEBO NAVARRO**,

    Plaintiff,

v.

**DMI CG HOLDINGS, LLC**,

    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY THIS ACTION [ECF NO. 4]

**THIS CAUSE** came before the Court on the Defendant, DMI GC Holdings, LLC ("DMI"), Motion to Compel Arbitration and Stay This Action Pending Arbitration, filed August 15, 2025 [ECF No. 4 (the "Motion")].

THE COURT has reviewed the Motion, the Response [ECF No. 12] and Reply [ECF No. 13] thereto, and the applicable law, and is fully advised in the premises. For the reasons set forth below, this Court finds that the Motion is due to be granted.

### I. BACKGROUND

On July 3, 2025, Plaintiff Sherley Hilary Mancebo Navarro ("Ms. Mancebo"), filed a civil action in the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida, entitled *Sherley Hilary Mancebo Navarro v. DMI GC Holdings, LLC.*, Case No. CACE-25-009916 (hereinafter referred to as the "State Court Action"). In her Complaint, she asserts the following three causes of action: (1) gender discrimination in violation of the Florida Civil

Rights Act (the "FCRA") (Count I)[1]; (2) pregnancy discrimination in violation of the FCRA (Count II); and (3) disability discrimination in violation of the FCRA (Count III). *See generally* ECF No. 1.

Ms. Mancebo was employed by DMI as a Quality Assurance Agent from 2022 until her termination in 2024. She alleges that DMI discriminated against her based on pregnancy and related medical complications by placing her on unpaid leave, refusing to reassign her to available comparable positions, and ultimately terminating her employment despite satisfactory performance. *See* Comp. ¶¶ 7-27. She claims that similarly situated, non-pregnant employees were retained or reassigned, making the employer's stated reasons pretextual, and she seeks damages and other relief under the FCRA. *Id.*

In the Motion now before this Court, DMI moves to compel arbitration pursuant to a Dispute Resolution Agreement ("Agreement") between Ms. Mancebo and DMI. ECF No. 4-1. The Agreement provides in relevant part:

> All disputes covered by this Agreement will be decided by a single arbitrator through final and binding arbitration and not by way of court or jury trial.

*See id.*, Ex. 2 ¶ 1. The Agreement further provides:

> YOU AGREE TO USE AN ELECTRONIC SIGNATURE TO DEMONSTRATE YOUR ACCEPTANCE OF THIS AGREEMENT. YOU FURTHER UNDERSTAND THAT AN ELECTRONIC SIGNATURE IS AS LEGALLY BINDING AS AN INK SIGNATURE.
>
> BY PROVIDING YOUR ELECTRONIC SIGNATURE, YOU ARE ACKNOWLEDGING YOU HAVE READ, REVIEWED, AND AGREE TO THIS AGREEMENT TO ARBITRATE.

*Id.* at ¶ 10.

---

[1] Plaintiff improperly labels Counts I and II pregnancy discrimination claims. However, Count I asserts a claim for gender discrimination, not pregnancy discrimination.

DMI argues that the Agreement subjects Ms. Mancebo's claims to mandatory arbitration and that this action must be stayed pending the resolution of arbitration. *See* Mot. at 8-11.

In her Response, Ms. Mancebo does not dispute that she completed DMI's electronic onboarding process, which include a module relating to "Dispute Resolution" for which a Certificate of Completion was issued. Resp. at 2. She argues, however, that she did not agree to arbitration. While she does not dispute that Florida law permits agreements to be signed electronically, she argues that there is no document bearing her electronic signature. According to Ms. Mancebo, although the Agreement contains space for her signature, DMI has not provided a document showing her electronic signature. *See id*. at 2-4. Ms. Mancebo thus contends that a signed Agreement does not exists. *Id* at 3.

In their Reply, DMI argues, for the first time, that the Agreement includes a delegation provision and that, therefore, any dispute regarding the enforceability of the Agreement must be determined by the arbitrator. They also aver that a Certificate of Completion could not have been generated unless Ms. Mancebo clicked "Agree" after receiving the Agreement. Reply at 2-5. That is, according to DMI, the certificate is issued only after an employee affirmatively indicates that they have read, understood, and consented to the Agreement, which serves as the employee's electronic signature. *Id.* Accordingly, DMI's stance is that Ms. Mancebo's own admissions and the undisputed record establish that she knowingly accepted and agreed to the Agreement through a valid and enforceable process. *Id.*

The Motion is fully briefed and ripe for adjudication.

## II. LEGAL STANDARD

This case presents a threshold dispute regarding the existence and enforceability of an alleged arbitration agreement between the parties. The Federal Arbitration Act ("FAA") governs the validity of arbitration agreements. *Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1329 (11th Cir. 2014) (citation omitted). The FAA "embodies a liberal federal policy favoring arbitration agreements." *Id.* (internal quotations omitted). "Under the FAA, a written agreement to arbitrate is 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Lambert v. Austin Indus.*, 544 F.3d 1192, 1195 (11th Cir. 2008) (citing 9 U.S.C. § 2). "Accordingly, the FAA requires a court to either stay or dismiss a lawsuit and to compel arbitration upon a showing that (a) the plaintiff entered into a written arbitration agreement that is enforceable 'under ordinary state-law' contract principles and (b) the claims before the court fall within the scope of that agreement." *See id.* (citing 9 U.S.C. §§ 2-4).

"The FAA creates a presumption in favor of arbitrability." *See Palidino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1057 (11th Cir. 1998); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."). The party resisting arbitration bears the burden of showing that the arbitration provision is invalid or does not encompass the claims at issue. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000).

## III. DISCUSSION

As set forth above, DMI moves to compel arbitration on grounds Ms. Mancebo agreed to arbitrate employment-related disputes through an electronic onboarding process. Ms.

Mancebo claims that she never executed or otherwise assented to the Agreement and that her completion of an online training module does not constitute consent to arbitration. Accordingly, the primary issue before this Court is whether the parties formed a valid and binding agreement to arbitrate Ms. Mancebo's claims.

### 1. *The Delegation Clause.*

As an initial matter, this Court notes that in its Reply, DMI raises (for the first time) that the Agreement includes a delegation clause pursuant to which questions regarding the enforceability of the Agreement must be referred to the arbitrator. Reply at 1-2. Pursuant to Local Rule 7.1(c)(1), a reply memorandum is "strictly limited to rebuttal of matters raised in the memorandum in opposition without reargument of matters covered in the movant's initial memorandum of law." S.D. Fla. Local Rule 7.1(c)(1). As such "[a] reply memorandum may not raise new arguments or evidence, particularly where the evidence was available when the underlying motion was filed and the movant was aware (or should have been aware) of the necessity of the evidence." *Celeritech Int'l Corp. v. Superstar Holdings Inc.*, 348 F.R.D. 127, 135 (S.D. Fla. 2024) (King, J.) (quoting *Baltzer v. Midland Credit Mgmt., Inc.*, No. 14-20140-CIV, 2014 WL 3845449, at *1 (S.D. Fla. Aug. 5, 2014) (Goodman, M.J.)).

"While raising new arguments on reply is generally inappropriate, reply evidence 'may contain facts not previously mentioned in the opening brief, as long as the facts rebut elements of the opposition memorandum and do not raise wholly new factual issues.'" *Lage v. Ocwen Loan Servicing, LLC*, 145 F. Supp. 3d 1172, 1181 (S.D. Fla. 2015) (Bloom, J.) (citing *Giglio Sub s.n.c. v. Carnival Corp.*, No. 12-21680-CIV, 2012 WL 4477504, at *2 (S.D. Fla. Sept. 26, 2012) (Rosenbaum, J.), aff'd, 523 Fed.Appx. 651 (11th Cir. 2013)). DMI's argument regarding the delegation clause does not rebut elements of Ms. Mancebo's Response. Rather, this argument

is being presented for the first time as an additional ground to grant the relief it requests in its initial motion. That is categorically improper. *See Herring v. Secretary, Dep't of Corrections*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we have repeatedly admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court."); *Foley v. Wells Fargo Bank, N.A.*, 849 F. Supp. 2d 1345, 1349 (S.D. Fla. 2012) (Dimitrouleas, J.) ("Because it is improper for Defendant to raise this new argument in its Reply brief, the argument will not be considered."). DMI should have raised this argument, along with the requisite supporting facts, in its initial Motion.

      The mere presence of a delegation clause in a contract is not dispositive of a court's disposition of the case. A delegation clause operates as a defense that the defendant must raise in order to rely upon it. *See Johnson v. Keybank Nat'l Ass'n*, 754 F.3d 1290, 1291–92 (11th Cir. 2014). When a delegation clause is properly raised by the defendant and never specifically challenged by the plaintiff, the FAA directs the court to treat the clause as valid and compel arbitration. *See Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1144 (11th Cir. 2015). When the defendant does not properly raise the delegation clause and the plaintiff suffers prejudice as a result, the defendant has waived the delegation clause and the court must determine whether the arbitration agreement is enforceable. *See Bodine v. Cook's Pest Control Inc.*, 830 F.3d 1320, 1324 (11th Cir. 2016); *Johnson*, 754 F.3d at 1294.

      Thus, because DMI did not properly raise the delegation clause in its initial Motion, this Court will not consider DMI's argument regarding the delegation clause and turns to the enforceability of the Agreement.

### 2. *A Valid Written Agreement to Arbitrate Exists*

The validity of an arbitration agreement is "an issue of state contract law." *Fla. Power Corp. v. City of Casselberry*, 793 So. 2d 1174, 1179 (Fla. 5th DCA 2001); *Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1331 n.3 (11th Cir. 2005). A valid contract has four basic elements: "offer, acceptance, consideration, and sufficient specification of essential terms." *Ranch, Weaver, Norfleet, Kurtz & Co., Inc. v. AJP Pine Island Wholesalers, Inc.*, 313 So. 3d 625, 630 (Fla. 4th DCA 2021); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009).

Here, the Agreement contains a clear, valid, written agreement to arbitrate. It clearly sets forth the intent of the agreement – to subject disputes, such as those claimed by Ms. Mancebo, to arbitration. *See Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1221-22 (11th Cir. 2000) (compelling arbitration of statutory claims where agreement stated that it covered "any dispute between them or claim by either against the other"); *Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 700 (11th Cir. 1992) (compelling arbitration where agreement provided that arbitration would be proper for "any dispute, claim or controversy that may arise between me and my firm....").

Although Ms. Mancebo challenges the absence of her signature on the Agreement, the Eleventh Circuit has expressly stated that "while the FAA requires that the arbitration agreement be in writing, it does not require that it be signed by the parties." *Caley v. Gulfstream Aerospace Corp.*, 428 F. 3d 1359, 1368 (11th Cir. 2005). As such, no signature is required, and the fact that the Agreement is in writing is all that is required to satisfy the FAA. *See id*; *see also Wiles v. Palm Springs Grill*, LLC, 2016 U.S. Dist. LEXIS 106297, *5 (S.D. Fla. Aug. 11, 2016) (Marra, J.); *Santos v. Gen. Dynamics Aviation Servs. Corp.*, 984 So. 2d 658, 660-61 (Fla.

4th DCA 2008). In any event, Ms. Mancebo did electronically accept the Agreement at issue here.

Ms. Mancebo acknowledges that she completed the Dispute Resolution module and that a Certificate of Completion was issued. And, as DMI points out, the audit trail associated with Ms. Mancebo's access to the Dispute Resolution module reflects that the module was completed on October 13, 2022, at 1:51 p.m. (MST). *See* ECF No. 4-1 at Ex. 2 ¶¶33-36. DMI submits the unrebutted declaration of Gene March, who explains that under DMI's Learning Management System procedures, a Certificate of Completion is generated only after an employee clicks "Agree" following review of the Dispute Resolution Agreement. *See id*.

Based on a review of the record evidence, this Court finds that Ms. Mancebo did electronically assent to the Agreement. Her argument that DMI must present a document with her actual signature is unavailing. As discussed above, the Eleventh Circuit has expressly held otherwise, and she offers no authority to the contrary. *See Caley*, 428 F. 3d at 1368 ("We readily conclude that no signature is needed to satisfy the FAA's written agreement requirement.").

Therefore, she is bound by the Agreement's terms. *See Kendall Imps., LLC v. Diaz*, 215 So. 3d 95, 100 (Fla. 3d DCA 2017) (enforcing arbitration clause against parties who had signed the agreement); § 668.004, Fla. Stat. Ann. ("Unless otherwise provided by law, an electronic signature may be used to sign a writing and shall have the same force and effect as a written signature."); *Valdez v. Bags, Inc.*, No. 16-20390-CIV, 2016 WL 10932513, at *3 (S.D. Fla. June 30, 2016) (Torres, M.J.), report and recommendation adopted, No. 16-20390-CIV, 2016 WL 10932750 (S.D. Fla. Aug. 22, 2016) (King, J.).

### 3. *Ms. Mancebo's Claims Fall Within The Agreement.*

Ms. Mancebo does not argue that her claims in this lawsuit do not fall within the Agreement, but the Court nevertheless has assured itself that this requirement is also satisfied. The Agreement covers:

> Except as it otherwise provides, this agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration, including without limitation, to disputes arising out of or relating to the application for employment, background checks, privacy, employment relationship, or the termination of that relationship (including post-employment defamation or retaliation), trade secrets, unfair competition, compensation, classification, minimum wage, expense reimbursement, overtime, breaks and rest periods, or retaliation, discrimination, or harassment (except claims relating to sexual harassment and sexual assault that may not be subject to pre-dispute arbitration agreement under the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act) and claims arising under the Fair Credit Reporting Act, Defend Trade Secrets Act, Civil Rights Act of 1964, 42 U.S.C. §1981, Rehabilitation Act, Civil Rights Acts of 1866 and 1871, Civil Rights Act of 1991, 8 U.S.C. § 1324B (Unfair Immigration Related Practices), 41 U.S.C. § 4712, Pregnancy Discrimination Act, Equal Pay Act, Americans with Disabilities Act, Age Discrimination in Employment Act, Older Workers Benefit Protection Act, Occupational Safety and Health Act, Family and Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act (except for claims for employee benefits under any benefit plan sponsored by the company and covered by the Employee Retirement Income Security Act of 1974 or funded by insurance), Affordable Care Act, Genetic Information Non-Discrimination Act, Uniformed Services Employment and Reemployment Rights Act, Worker Adjustment and Retraining Notification Act, Consolidated Omnibus Budget Reconciliation Act of 1985, the False Claims Act, and state statutes or regulations, if any, addressing the same or similar subject matters, and all other federal or state legal claims (including without limitation torts) arising out of or relating to your application, selection, employment, or the termination of employment.
>
> Additionally, except as this agreement otherwise provides, the arbitrator, and not any court, shall have exclusive authority to resolve any dispute relating to the validity, applicability, enforceability, unconscionability or waiver of this agreement, including, but not limited to any claim that all or any part of this agreement is void or voidable.

ECF No. 4-1, Ex. 2. Thus, this Court finds that Ms. Mancebo's FCRA claims of gender discrimination, pregnancy discrimination, and disability discrimination all fall within Agreement.

### 4. *A Stay Of This Action Is Appropriate.*

DMI requests that this Court stay this case pending arbitration. Ms. Mancebo does not address whether a stay is warranted.

Section 3 of the FAA requires district courts to stay "any suit or proceeding ... upon being satisfied that [an] issue involved in [the] suit or proceeding is referable to arbitration ... until [the] arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, [section] 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478–79 (2024).

Because this Court has determined that the arbitration provision in the Agreement is binding and that this matter must be arbitrated, a stay is warranted. See *Orellana v. Roblox Corp.*, 769 F. Supp. 3d 1273, 1290 (M.D. Fla. 2025); *Ketchen v. DRJ Gainesville K, LLC*, 2024 WL 4230527, at *2 (N.D. Fla. Aug. 28, 2024) (finding that a district court should stay the case after granting motion to compel arbitration).

## IV.   CONCLUSION

The Dispute Resolution Agreement between Ms. Mancebo and DMI is valid and enforceable. Further, the claims at issue in this lawsuit fall squarely within the Agreement.

Accordingly, for the reasons set forth above, it is hereby

**ORDERED AND ADJUDGED** that the Motion **[ECF No. 4]** is **GRANTED**. Plaintiff shall arbitrate the claims she asserts in this lawsuit against the Defendant. The parties

are instructed to file Joint Status Reports every **sixty (60) days** advising this Court as to the status of the arbitration. The first Joint Status Report is due **March 21, 2026**. It is further

**ORDERED** that this case is **STAYED** pending the conclusion of arbitration or further order of this Court.

The Clerk of the Court is directed to **CLOSE** this case for administrative and statistical purposes, and all pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers in the Southern District of Florida, this 5th day of February, 2026.

_____
**MELISSA DAMIAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record